IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

CHRISTOPHER S. SMALLWOOD,            )
               Plaintiff,            )
                            )            Civil Action No. 4:13cv00069
v.                                   )
                            )            By:    Joel C. Hoppe
CAROLYN W. COLVIN,                    )            United States Magistrate Judge
Acting Commissioner,                 )
Social Security Administration,      )
               Defendant.            )

## REPORT AND RECOMMENDATION

Plaintiff Christopher Smallwood asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–422, 1381–1383f. This Court has authority to decide Smallwood's case under 42 U.S.C. §§ 405(g) and 1383(c)(3), and his case is before me by referral under 28 U.S.C. § 636(b)(1)(B). On appeal, Smallwood objects to the Commissioner's evaluation of his severe mental impairment and resulting functional limitations. *See generally* Pl. Br. 3–7, ECF No. 17. Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I find that substantial evidence supports the Commissioner's final decision that Smallwood is not disabled.

### I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for

1

that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court

asks only whether the ALJ applied the correct legal standards and whether substantial evidence

supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is

"more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount

of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes

into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v.*

*Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474,

487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting

evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v.*

*Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585,

589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the

ALJ is not binding if it was reached by means of an improper standard or misapplication of the

law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a)

(governing claims for DIB), 416.905(a) (governing adult claims for SSI). Social Security ALJs

follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in

sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an

impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to

his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Smallwood filed for DIB and SSI on June 15, 2010. *See* Administrative Record ("R.") 62, 70. He was 35 years old, *id.*, and had worked for many years in the construction industry, R. 90. Smallwood said that he stopped working on November 30, 2009, because of "back problems," hernias, and depression. R. 215. The state agency denied his applications initially in October 2010, R. 68, 78, and upon reconsideration in July 2011, R. 91, 103.

Smallwood appeared with counsel at a hearing before an Administrative Law Judge ("ALJ") on May 9, 2012. R. 32. He testified as to his alleged impairments and to the limitations those impairments caused in his daily activities. R. 37–52. A vocational expert ("VE") also testified as to Smallwood's past work and ability to perform other work existing in the national and regional economies. R. 52–57.

In a written decision dated July 9, 2012, the ALJ concluded that Smallwood was not entitled to disability benefits. R. 25. He found that Smallwood suffered from three "severe impairments: back difficulty, asthma, and mood disorder." R. 16. None of Smallwood's severe impairments, alone or combined, met or medically equaled an impairment listed in the Act's regulations. R. 17–18.

The ALJ next determined that Smallwood had the residual functional capacity ("RFC")[1] to perform a limited range of light work.[2] R. 18, 24–25. As to Smallwood's mental capacity, the ALJ found that Smallwood could "handle simple and repetitive tasks," maintain concentration "within customary work tolerances, with breaks," "interact with co-workers and supervisors as needed for task completion," and "respond appropriately to change[s] in a routine work setting," but "should have minimal public contact." R. 18. The ALJ noted that this RFC ruled out Smallwood's return to his past work as a construction laborer and dump-truck driver because the VE testified that these were at least "medium" exertion jobs. R. 23–24.

Finally, relying on the VE's testimony, the ALJ concluded that Smallwood was not disabled because he still could perform certain unskilled occupations that existed in significant numbers nationally and in Virginia, such as merchandise marker, silver wrapper, and routing clerk. R. 24. The Appeals Council declined to review the ALJ's decision, R. 1, and this appeal followed.

### III. Discussion

Smallwood's overarching objection is that the ALJ impermissibly crafted his own mental RFC that conflicted with each relevant medical-source opinion in the record. *See* Pl. Br. 6. He argues that the ALJ's rejection of these opinions triggered the Commissioner's duty to obtain a consultative mental examination before denying his claim. *See id.* at 3–4, 6–7. He also argues

---

[1] "RFC" is an applicant's maximum ability to work "on a regular and continuing basis" despite his impairments. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC takes into account "all of the relevant medical and other evidence" in the applicant's record and must reflect the "total limiting effects" of the applicant's impairments. 20 C.F.R. §§ 404.1545, 416.945.

[2] "Light work" involves lifting no more than twenty pounds at a time but frequently lifting or carrying objects weighing ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can lift twenty pounds (and frequently lift or carry ten pounds) can perform light work only if he also can "do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1999).

4

that the ALJ erred in giving "little weight" to the opinions of Richard Patterson, M.A., Smallwood's former mental health counselor. *Id.* at 5–6. Smallwood asks the Court to reverse the Commissioner's decision and award benefits, or to remand his case for further administrative proceedings. *Id.* at 7.

A.    *Consultative Mental Exam*

The Commissioner must purchase a consultative examination "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on the [applicant's] claim." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 695 (W.D. Va. 2009) (quoting 20 C.F.R. §§ 404.1519a(b), 416.919a(b)). Although the Commissioner has a duty to develop the record, the regulations require only that the "evidence be 'complete' enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability[,] and the claimant's residual functional capacity." *Id.* (citing *Cooke v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). Thus, a "reviewing court must defer to the [Commissioner's] decision not to purchase a consultative exam when the record contains sufficient information" to make these administrative findings. *Johnson v. Astrue*, No. 6:11cv9, 2012 WL 2046939, at *3 (W.D. Va. June 5, 2012).

Smallwood argues that the Commissioner was required to order a consultative mental exam because the ALJ's RFC determination conflicts with each of the medical-source opinions about his mental impairment. *See* Pl. Br. 4. This argument confuses the agency's duty to obtain evidence "sufficient" to resolve Smallwood's claim with the ALJ's authority to weigh and resolve conflicting evidence, including medical evidence, in the record. *See Kersey*, 614 F. Supp. 2d at 693; *Nye v. Colvin*, No. 3:13-12115, 2014 WL 2893199, at *20 (S.D. W.Va. June 24, 2014). When the record contains sufficient evidence to determine whether a claimant is disabled

5

under the Act, the fact that the ALJ discredited the available medical-source opinions "does not mean that [the agency] had a duty to seek additional information . . . ." *Coleman v. Astrue*, No. 2:06cv66, 2007 WL 3088074, at *7 (W.D. Va. Oct. 22, 2007).

Smallwood's administrative record contained medical opinions from two state-agency psychologists, a mental RFC assessment from Smallwood's former counselor, medical records documenting Smallwood's mental health treatment throughout the relevant period, observations of Smallwood's mental state from three examining physicians and one examining nurse practitioner, and statements from Smallwood and a close friend describing Smallwood's activities and limitations. *See* R. 67, 75, 86–88, 99–100 (state-agency psychologists' opinions); R. 37–51, 236–41, 245, 290, 300 (claimant's and friend's statements); R. 346–47, 365–70, 418, 421–23,424–25, 471, 473–75, 491–93, 494–96, 497–98, 500–01, 513 (treatment notes); R. 514–16 (counselor's opinion); R. 377–81, 401, 445 (examining sources' observations). This evidence, as described more fully below, is sufficient to support an informed decision on Smallwood's disability claim. *Compare Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) (per curiam) (finding no error where the ALJ had opinions from the claimant's "treating physician, a licensed clinical psychologist, state agency psychologist, and notes from" a mental health provider), *with Huddleston v. Astrue*, 826 F. Supp. 2d 942, 959 (S.D. W.Va. 2011) (reversing and remanding where "the ALJ had no medical records, consultative examinations, or medical source statements" from the relevant period and "circumstances point[ed] to the probable existence of probative and necessary evidence" not provided by the claimant). Accordingly, I find that the Commissioner was not required to obtain a consultative mental exam in Smallwood's case.[3]

---

[3] Smallwood first requested a consultative mental exam when his attorney asked the Appeals Council to review the ALJ's decision in September 2012, but he did not submit any new medical evidence supporting this request. *See* R. 4, 34–35, 57–58, 301–04. The Commissioner in

B.    *Medical-Source Opinions*

ALJs must weigh each "medical opinion" in the applicant's record. 20 C.F.R. §§ 404.1527(c), 416.927(c). Medical opinions are statements from "acceptable medical sources," such as physicians and psychologists, that reflect judgments about the nature and severity of the applicant's impairment, including his symptoms, diagnosis and prognosis, what he can still do despite his impairment, and his functional limitations. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The regulations classify medical opinions by their source: those from treating sources and those from non-treating sources, such as examining physicians and state-agency psychologists. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Opinions from non-treating sources are not entitled to any particular weight.[4] *See id.* Rather, the ALJ must consider certain factors in determining what weight to give such opinions,

---

counseled cases generally "has a right to presume that [the applicant's] counsel presented [his] strongest case for benefits." *Perry v. Astrue*, No. 3:10cv1248, 2011 WL 5006505, at *15 (S.D. W. Va. Oct. 20, 2011) (citing *Nicholson v. Astrue*, 341 F. App'x 248, 253 (7th Cir. 2009)); *accord Bell v. Chater*, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (per curiam) ("[The Commissioner] is not required to function as the claimant's counsel, but only to develop a reasonably complete record."). At oral argument, counsel for Smallwood agreed, as he must, that the ALJ's RFC determination need not merely parrot limitations stated in a medical-source opinion. Rather, counsel acknowledged that the RFC must be supported by evidence in the record, including medical-opinion evidence, other medical evidence, or a claimant's own statements. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (unpublished) (per curiam); 20 C.F.R. §§ 404.1545(e); 416.945(e). Counsel maintained that the evidence in the record did not support the determination and insisted that a consultative exam was necessary.

Beyond this argument, counsel has not explained how a consultative exam might have changed the outcome in his case. *See* Pl. Br. 3–4. Thus, the Appeal Council's failure to order the exam, if error, was harmless. *See Bolden v. Colvin*, No. 4:13cv32, slip op. at 25 (W.D. Va. July 23, 2014) (Hoppe, M.J.) (finding that the Appeals Council's failure to order a consultative mental exam, if error, was harmless where Bolden did not explain how the exam might have changed the result in her case), *adopted by* 2014 WL 4052856, at *1 (Aug. 14, 2014) (Kiser, J.).

[4] A treating-source medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the record. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2). There are no treating-source medical opinions regarding Smallwood's mental impairments in the record.

7

including the source's familiarity with the applicant, the weight of the evidence supporting the opinion, the source's medical specialty, and the opinion's consistency with other evidence in the record. *See id.* The ALJ also must explain the weight given to all medical opinions and the reasons for such weight. *See Radford v. Colvin*, 734 F.3d 288, 295–96 (4th Cir. 2013); 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Finally, if the ALJ's RFC assessment conflicts with a medical opinion, he must explain why that opinion was not adopted in full. *Davis v. Colvin*, No. 4:13cv35, slip op. at 6 (W.D. Va. July 14, 2014) (Hoppe, M.J.), *adopted by* 2014 WL 3890495 (Aug. 7, 2014) (Kiser, J.).

Non-acceptable medical sources, such as therapists, cannot give "medical opinions" about the applicant's condition. *Ward v. Chater*, 924 F. Supp. 53, 56 (W.D. Va. 1996); 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). But they can provide valuable information, including opinions, about the applicant's medical condition and functional limitations. *Adkins v. Colvin*, No. 4:13cv24, slip op. at 11 (W.D. Va. June 20, 2014) (Hoppe, M.J.), *adopted by* 2014 WL 3734331, at *3 (July 28, 2014) (Kiser, J.). The ALJ may consider these opinions as he would opinion evidence from acceptable medical sources, and he should do so when the source "had a lengthy relationship with the claimant." *Id.*; *see also Hise v. Colvin*, No. 5:13cv37, slip op. at 15 (W.D. Va. May 28, 2014) (Hoppe, M.J.), *adopted sub nom. Hise v. Astrue*, 2014 WL 3557549 (July 18, 2014) (Urbanski, J.). Non-acceptable medical sources are, however, not "treating" sources, and their opinions are never entitled to any particular weight. *Hise*, 2014 WL 3557549, at *12 n.6 (Hoppe, M.J.). Even so, an ALJ may rely on a non-acceptable medical source's opinion if it is supported by the record. *See Robinson v. Colvin*, --- F. Supp. 2d ---, 2014 WL 3485975, at *3 (E.D.N.C. 2014) (citing SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006)).

*1.*     *The Opinions*

Smallwood alleges that he has been disabled by depression and various physical impairments since November 30, 2009. *See* R. 62, 70. In late summer 2010, the state agency arranged for Dr. Thabit Bahhur, M.D., to examine Smallwood because a state-agency reviewer determined that the evidence in his record was insufficient to support an initial decision on Smallwoood's claim. *See* R. 65, 73, 377. Dr. Bahhur examined Smallwood on September 23, 2010. *See* R. 377. Smallwood told Dr. Bahhur that he has been depressed since May 18, 2005, when he witnessed a car strike and kill his three-year-old stepdaughter. R. 378. Although Smallwood had recently been discharged from counseling services, R. 365, he told Dr. Bahhur that he "sees a counselor" six times per year, R. 386.

Dr. Bahhur acknowledged that Smallwood "expresse[d] signs of depression and [told] stories of why he is depressed." R. 380. At this point, however, Smallwood "seemed to have a normal affect," and his mood, thought content, and memory, were all "within normal limits." R. 388. After the exam, Dr. Bahhur opined that Smallwood "may have some form of depression secondary to the loss of his daughter." *Id.* He suggested that increased counseling and "[p]erhaps some pharmacological management of depression would be in order." *Id.* Dr. Bahhur opined that Smallwood's condition would be "easily controlled" by "appropriate medical management" and would not interfere with his ability to perform "normal" work duties. R. 381.

State-agency psychologist Howard Leizer, Ph.D., reviewed Smallwood's applications on October 1, 2010. R. 68, 76. Citing Dr. Bahhur's consultative report, Dr. Leizer found that Smallwood had a "non-severe" affective disorder. *See* R. 68–69, 74–75. He explained that Smallwood "may feel depressed at times," but that his affective disorder caused no limitations in

his activities of daily living, social functioning, or concentration, persistence, and pace, and no episodes of decompensation. R. 68–69, 74–75, 78.

State-agency psychologist Stephanie Fearer, Ph.D., reconsidered Smallwood's applications on July 29, 2011. *See* R. 88, 100. Based on her review of updated medical records available through June 27, 2011, Dr. Fearer also found that Smallwood had a "non-severe" affective disorder. R. 82, 87–88, 94, 99–100. She noted that Smallwood had received mental health counseling for two months in 2010 and that a nurse practitioner prescribed Zoloft and BuSpar to treat symptoms that she diagnosed as depression with anxiety and post-traumatic stress disorder ("PTSD"). R. 87, 99. Dr. Fearer explained that the nurse was not qualified to make these diagnoses and that Smallwood's mental status exams were consistently unremarkable. *See id.* Thus, Dr. Fearer found "no evidence" suggesting that Smallwood's affective disorder interfered with his ability to perform basic work activities. R. 87–88, 99–100.

Nurse Tracy Lange, N.P., Smallwood's primary-care provider at Bassett Family Practice, completed a one-page "Physical Abilities Statement" on May 8, 2012. *See* R. 513. Nurse Lange noted only that Smallwood had "many mental issues which are far worse than [the] physical limits" she listed on the form. *Id.* She did not identify any specific restrictions associated with Smallwood's mental health condition or medications. *See id.*

Richard Patterson, M.A., Smallwood's former counselor at Piedmont Community Services, completed a "Mental Abilities Statement" on May 8, 2012. *See* R. 514–16. Patterson diagnosed Smallwood with Depressive Disorder Not Otherwise Specified, but suggested that PTSD had been "rule[d] out" in September 2010. R. 514.

Relying on his notes from summer 2010, Patterson filled out a check-box form listing Smallwood's mental limitations from November 30, 2009, through May 8, 2012. *See* R. 515–16.

10

He opined that Smallwood was "unable to meet competitive standards"[5] for: (1) maintaining attention for two-hour segments; (2) completing a normal workday and workweek without interruptions from psychological symptoms; (3) performing at a consistent pace without unreasonable breaks; and (4) accepting instructions and responding appropriately to criticism from supervisors.[6] R. 514. He also opined that, during a typical workday, Smallwood "frequently" would experience psychological "symptoms severe enough to interfere with attention and concentration need[ed] to perform even simple work tasks." R. 515.

Patterson explained that Smallwood's self-reported "racing thoughts and problems concentrating would make it difficult for him to follow instructions or stay on task." R. 516. Patterson also noted that he personally "observed . . . Smallwood to be slightly paranoid and to show a general distrust of people." *Id.* He explained that these traits "would reduce [Smallwood's] ability to interact with the public or his coworkers and would interfere with his ability to accept instruction and respond appropriately to criticism." *Id.*

Patterson also opined that Smallwood was "seriously limited"[7] in his ability to: (1) maintain regular attendance and be punctual within "customary, usually strict" tolerances; (2) respond appropriately to changes in a routine work setting; (3) deal with normal "work stress"; or (4) get along with coworkers without unduly distracting them or exhibiting behavioral

---

[5] "Unable to meet competitive standards means [the] patient has noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or workweek." R. 514.

[6] The VE testified that Smallwood would be disabled if he were "unable to meet competitive standards" for maintaining attention for two hours at a time or for accepting instructions and responding appropriately to criticism from supervisors. R. 56–57.

[7] "Seriously limited means [the] patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or workweek." R. 514.

extremes.[8] R. 514. He also estimated that Smallwood would miss "about three days" of work each month due to his mental impairment or treatment. R. 515. Patterson explained that Smallwood's "decreased energy and problems with low motivation would interfere with his ability to maintain regular attendance at work." R. 516.

Finally, Patterson opined that Smallwood had a "limited but satisfactory"[9] ability to: (1) sustain an ordinary routine without special supervision; (2) make simple work-related decisions; and (3) work with or around others without being unduly distracted. R. 514. Smallwood's ability to understand, remember, and execute "very short and simple instructions" and to "ask simple questions or request assistance" was "unlimited or very good." *Id.* Patterson added in conclusion that "Smallwood's depression limited his ability to attend to his personal needs and would make it difficult to find and maintain employment." *Id.*

2. *The ALJ's Findings*

The ALJ considered each of these medical-source opinions in forming Smallwood's mental RFC.[10] *See* R. 17–18, 21, 22–23. He gave "no weight" to the state-agency psychologists' opinions that Smallwood's mental impairment was not severe. R. 23. Giving Smallwood "the maximum benefit," the ALJ found that Smallwood's "mood disorder constitute[d] a severe impairment" based on the record as of July 2012. *Id.* He also found, however, that the mood

---

[8] The VE testified that Smallwood would be disabled if he were "seriously limited" in his ability to get along with coworkers without unduly distracting them or exhibiting behavioral extremes. *See* R. 56.

[9] "Limited but satisfactory means [the] patient has noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or workweek." R. 514.

[10] The ALJ did not expressly weigh Dr. Bahhur's comments about Smallwood's mental status in September 2010. This omission, if error, was harmless because the ALJ's findings are consistent with Dr. Bahhur's impression that Smallwood "may have some form of depression" and would "perhaps" benefit from "some pharmacological management of depression." R. 388. Indeed, the ALJ rejected Dr. Bahhur's opinion that Smallwood could manage "normal" work duties in any "field that he may [want] to pursue" even without medication. R. 389.

disorder was not presumptively disabling because it caused "no restrictions" in Smallwood's activities of daily living; "no more than moderate difficulties" with social functioning, concentration, persistence, and pace; and "no episodes of decompensation." R. 17–18.

By classifying Smallwood's mental impairment as "not severe," the state-agency psychologists found at most a "slight abnormality" that had "such a minimal effect on [Smallwood] that it would not be expected to interfere," *Evans v. Heckler*, 734 F.2d 1012, 1013 (4th Cir. 1984), with his "mental ability to do basic work activities," 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities" include following simple instructions, responding appropriately to other people, exercising judgment, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). Thus, the ALJ's mental RFC assessment is considerably more restrictive than the state-agency psychologists' opinions. Nonetheless, it is consistent with the psychologists' opinions that the "objective medical evidence did not show a disabling mental condition." *Fields v. Astrue*, No. 2:09cv24, 2010 WL 723690, at *26–30 (W.D. Va. Feb. 26, 2010) (substantial evidence supported RFC limiting claimant to "simple, noncomplex tasks" in part because the limitation was consistent with two state-agency psychologists' opinions that the claimant "did not suffer from a severe [mental] impairment").

The ALJ also gave "no weight" to Nurse Lange's opinion that Smallwood's "mental problems were worse than his physical problems" in May 2012. R. 23. He explained that Nurse Lange was a non-acceptable medical source, that Smallwood reported a diagnosis of PTSD that she merely "adopted," and that her opinion was "inadequately supported and inconsistent with the record as a whole." R. 22, 23.

Finally, the ALJ gave "little weight" overall to Patterson's May 2012 opinions. R. 23. He explained that Patterson had "not seen or examined [Smallwood] since September 2010, almost

13

two years before he offered this opinion." *Id.* He also noted that many of the "serious," work-preclusive limitations Patterson identified were inconsistent with his own discharge notes, which documented that Smallwood "ha[d] the skills necessary to cope with his stressors and the resources available to allow him to cope" as of September 15, 2010. *Id.* The ALJ also found that Patterson's "assessment [was] inconsistent with the weight of the evidence of record as a whole, as discussed [elsewhere]" in his written decision. *Id.*

The ALJ's RFC determination is less restrictive than Patterson's assessment in that it allows Smallwood to perform at least some unskilled work. *See* R. 18, 24–25, 56–57, 514. Unskilled work "is a term of art, defined by regulation as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.'" *Fisher v. Barnhart*, 181 F. App'x 359, 364 n.3 (4th Cir. 2006) (quoting 20 C.F.R. § 404.1568(a)). Competitive, remunerative, unskilled work demands the ability, on a sustained basis, to understand, remember, and execute simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. *Davis*, 2014 WL 3890495, at *13 (Hoppe, M.J.).

Thus, the ALJ's RFC conflicts with Patterson's opinions that Smallwood was "seriously limited" or "unable to meet competitive standards" in his ability to concentrate for two-hour segments; respond appropriately to supervisors, coworkers, and changes in a routine work setting; maintain acceptable workplace attendance; and sustain concentration, persistence, and pace sufficient to perform simple repetitive tasks during a normal workday. *Compare* R. 18, *with* R. 514–16; *see also* R. 56–58 (VE's testimony). The ALJ's finding that Smallwood "should have

14

minimal public contact" is consistent with Patterson's opinion that Smallwood's impairment "would reduce his ability to interact appropriately with the public . . . ."[11]

### 3. Analysis

Smallwood argues that the ALJ committed reversible legal error when he "disregarded" Patterson's opinions without evaluating them "based on the exact same criteria" used to evaluate medical opinions from physicians and psychologists. Pl. Br. 5 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). He also argues that Patterson's opinions were "entitled" to "more weight" because they were based on his own treatment notes, supported by an "extensive" explanation, and "confirmed by" Nurse Lange's treatment notes and Dr. Bahhur's impression of Smallwood's mental status. Pl. Br. 5–6. These arguments are without merit.

The ALJ should consider Patterson's opinion as he would any relevant evidence, "especially when . . . the non-acceptable medical source had a lengthy relationship with the claimant and can present relevant evidence as to the claimant's impairment or ability to work." *Hall v. Colvin*, No. 7:12cv327, 2014 WL 988750, at *8 (W.D. Va. Mar. 13, 2014) (citing *Foster v. Astrue*, 826 F. Supp. 2d 884, 886 (E.D.N.C. 2011)). But his opinion is not entitled to any particular weight. *See Hise*, 2014 WL 3557549, at *12 n.6 (Hoppe, M.J.). In fact, the ALJ is not required to explain the weight given to such opinion unless it might affect the case's outcome.

---

[11] The ALJ's RFC does not expressly address Smallwood's ability to understand, remember, or execute instructions. R. 18. However, the ALJ's finding that Smallwood can perform any of the three unskilled occupations that the VE identified, R. 24, necessarily assumes Smallwood can "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." *See* Dep't of Labor, Office of Admin. Law Judges, *Dictionary of Occupational Titles* app. C, ¶ III (4th ed. 1991), 1991 WL 688702 (*DOT*) (describing the "satisfactory" worker's ability to perform a "Reasoning Level 2" occupation, such as merchandise marker, silver wrapper, or routing clerk); *see also DOT* No. 209.587-034 (merchandise marker); *DOT* No. 318.687-018 (silver wrapper); *DOT* No. 222.687-022 (routing clerk). This finding is consistent with the ALJ's decision to credit Smallwood's testimony that he "does 'pretty good' with written instructions, and does 'okay' with spoken instructions." R. 18, 240.

15

*See Adkins*, 2014 WL 3734331, at *3 (Kiser, J.); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding no error in ALJ's failure to expressly weigh physical therapist's opinion).

Consistent with the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c), the ALJ considered Patterson's professional qualifications, the length and nature of his examining relationship with Smallwood, the weight of the evidence supporting Patterson's opinions, and the opinions' consistency with other relevant evidence in the record. *See* R. 17–18, 19–20, 22–23; 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). Thus, the ALJ did not use the wrong legal standard when weighing Patterson's opinions. *See Adkins*, 2014 WL 3734331, at *3 (Kiser, J.); *Hise*, 2014 WL 3557549, at *13 (Hoppe, M.J.).

Furthermore, the ALJ gave "specific and legitimate reasons," supported by substantial evidence in the record, for rejecting the work-preclusive portions of Patterson's assessment. *Cf. Bishop v. Comm'r of Soc. Sec.*, --- F. App'x ---, 2014 WL 4347190, at *1 (4th Cir. Sept. 3, 2014) (finding no error where the ALJ gave specific and legitimate reasons for rejecting treating physician's opinion). Smallwood went to Patterson in July 2010 "to get help [with] depression, anxiety, and grief" more than five years after witnessing his stepchild's sudden and violent death. R. 372. He stated that he "need[ed] help with" depression, anxiety, difficulty sleeping, "[v]ery fast thoughts or feeling speeded up," and "[d]ifficulty with memory, concentration, or decision making." *Id.* He also described strained personal relationships, particularly with his abusive parents, estranged wife, and patronizing boss. *Id.*

At their intake session on July 21, Patterson noted that Smallwood would undergo counseling as needed for 45 days to "develop and implement effective coping skills to carry out normal responsibilities[,] participate constructively in relationships," and improve his

16

depression.[12] R. 375. On July 26, Patterson diagnosed Smallwood with Depressive Disorder Not Otherwise Specified and Anxiety Disorder Not Otherwise Specified. R. 370. He noted that Smallwood scored a 60 on the Global Assessment of Functioning ("GAF")[13] scale, *id.*, and "appear[d] to have difficulty building and maintaining social supports," R. 373.

In all, Smallwood spent fewer than four hours over five face-to-face sessions in counseling with Patterson. *See* R. 365, 367–69. They spent their time processing Smallwood's depression, grief, frustration, and strained family relationships. *See* R. 365, 367, 368. Patterson observed that Smallwood "greeted [him] appropriately" at each meeting and increasingly exhibited awareness of his stressors and appropriate coping skills. *See* R. 365, 367, 368, 369. Other than noting once that Smallwood appeared in a good mood, R. 367, the treatment notes contained no mental status exams. Patterson discharged Smallwood from counseling on September 15, 2010, because Smallwood "ha[d] the skills necessary to cope with his stressors and the resources available to allow him to cope." R. 365. Patterson said Smallwood could return to counseling at any time. *See id.*

---

[12] Although Smallwood's initial visit with Patterson was classified as "crisis stabilization," there is no evidence in the record that Smallwood had recently been hospitalized for psychiatric symptoms or referred to counseling by a healthcare provider. *See* R. 370–75; *see also* R. 321, 322, 323, 327, 333, 335 (no mental health records available from Smallwood's healthcare providers in North Carolina).

[13] "GAF" scores represent a "clinician's judgment of the individual's overall level of functioning." Am. Psychological Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. 2000) (*DSM-IV*). The scale is divided into 10 ten-point ranges reflecting different levels of functioning, with 1–10 being the least functional and 91–100 being the most functional. *See id.* A score of 51–60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* at 34. Patterson also noted that Smallwood's "previous" GAF score was 65, R. 370, which indicates "some mild symptoms (e.g., depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., temporarily falling behind in school work)." *DSM-IV* at 34.

17

Twenty months later, Patterson opined that Smallwood had been unable to perform unskilled work since "as early as November 30, 2009," and "would have" the same limitations going forward. *See* R. 515–16. The ALJ may give less weight to even a treating physician's opinion rendered one year after she last examined her patient if the record contains "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (finding "no error in the ALJ's consideration of the year delay" between a treating physician's last examination and "opinion of disability," even though both occurred during the relevant period). He certainly may discredit a non-acceptable medical source's opinion under such circumstances if his reasons for doing so are supported by the record. This requirement was easily met here.

Substantial evidence supports the ALJ's finding that Patterson's counseling notes do not support the work-preclusive portions of his opinion. *See* R. 17, 23, 514–16. For example, most of Patterson's notes simply document Smallwood's descriptions of his rocky personal relationships. *See, e.g.*, R. 367, 368, 369. Patterson never questioned Smallwood's ability to concentrate; accept instructions or criticism from supervisors; maintain acceptable attendance or performance; understand, remember, or execute instructions; make decisions; or deal with changes in a routine setting. *See* R. 365–69. Many of Patterson's specific restrictions also conflict with his observations of Smallwood's "appropriate" behavior as well as his decision to discharge Smallwood once he "develop[ed] and implement[ed] effective coping skills to carry out normal responsibilities and participate constructively in relationships." R. 375.

Substantial evidence also supports the ALJ's finding that Patterson's "assessment [was] inconsistent with the weight of the evidence of record as a whole, as discussed" throughout the ALJ's written decision. R. 23. For example, Smallwood did not report any limitations on his ability to understand and remember things, complete tasks, concentrate, follow instructions, or

co-exist with others when he applied for disability in July 2010. R. 240. On the contrary, he said that he got along "fine" with supervisors and coworkers, followed instructions "pretty good" or "okay," and could finish what he started. *Id.* He also twice denied psychological difficulty tending to his personal and financial needs. R. 240, 373. These statements flatly contradict Patterson's opinion that "Smallwood's depression limited his ability to attend to his personal needs" while he was in counseling. R. 516. They also are inconsistent with Patterson's explanation that "Smallwood's paranoia and distrust of people would reduce his ability to interact appropriately with the public or his coworkers and would interfere with his ability to accept instruction and respond appropriately to criticism." R. 516.

Smallwood also consistently told Nurse Lange that he did not experience anhedonia,[14] memory loss, racing thoughts, paranoia, or difficulty concentrating. *See* R. 346 (Aug. 2010); R. 418 (Sept. 2010); R. 422 (Nov. 2010); R. 424 (Jan. 2011); R. 473 (Apr. 2011); R. 497 (Jan. 2012); R. 500 (Apr. 2012). These statements are inconsistent Patterson's explanation that Smallwood's self-reported low motivation, "racing thoughts and problems concentrating would make it difficult for him to follow instructions and stay on task" or to "sustain[] ordinary work performance throughout an eight-hour workday." R. 516.

Patterson's work-preclusive restrictions also are inconsistent with other examining healthcare providers' observations throughout the relevant period. For example, Nurse Lange observed that Smallwood was "pleasant" with a "normal" mood and affect on his first two visits to Bassett Family Practice in late summer 2010. *See* R. 347, 419. Dr. Bahhur also observed that Smallwood exhibited "normal" awareness, mood, affect, thought content, and memory during his

---

[14] Anhedonia is "a reduction in or the total loss of the feeling of pleasure in acts that normally give pleasure." Oxford Concise Medical Dictionary 36 (8th ed. 2010).

consultative exam on September 23, 2010, shortly after Smallwood was discharged from counseling. *See* R. 380.

Nurse Lange first observed that Smallwood was "down and depressed" and "stressed out" about family and financial issues on November 30, 2010. R. 421. She noted that Smallwood was "pleasant," but "depressed" and "visibly upset" while discussing his family history, particularly his stepdaughter's death. R. 422. Nurse Lange prescribed two medications to treat symptoms consistent with "prolonged PTSD" and "depression with anxiety." R. 422–23.

On January 14, 2011, Dr. Stephen Phillips, M.D., noted that Smallwood's mood, memory, judgment, and affect were "normal" during a cardiology appointment. R. 403. Nurse Lange also observed that Smallwood was "pleasant," but "depressed," during bimonthly appointments throughout 2011 and 2012. *See* R. 424, 471, 473, 491, 494 (Jan., Apr., June, Sept. & Oct. 2011); R. 497, 500–01 (Jan. & Apr. 2012). Nonetheless, her "notes consistently indicate that [Smallwood's] mood was stable with medication," R. 22, during the same time.[15] *See, e.g.*, R. 473 (Apr. 2011); R. 494 (Oct. 2011); R. 497 (Jan. 2012). She never encouraged Smallwood to return to counseling or questioned his memory, judgment, concentration, or social functioning. *See* R. 424–26, 494–95, 497–98, 500–01.

The ALJ ultimately found that Smallwood's "concentration and social functioning had been deficient at times," but that the record did not support certain aspects of Patterson's

---

[15] Smallwood argues in passing that he needed "pharmacological treatment beyond" what was "available" to him. Pl. Br. 6. Presumably, Smallwood is referring to his testimony that he sometimes could not afford his psychotropic medications. *See* R. 50. The ALJ found that Smallwood's testimony conflicted with other evidence in the record, particularly Nurse Lange's progress notes. R. 21. This finding is supported by Bassett Family Practice records dated after November 30, 2010, showing that Nurse Lange instructed Smallwood to "continue" his medications and regularly provided Smallwood with prescription samples or refills. *See* R. 423 (Nov. 2010); R. 424 (Jan. 2011); R. 473–74 (Apr. 2011); R. 471–72 (June 2011); R. 492 (Sept. 2011); R. 494–95 (Oct. 2011); R. 497–98 (Jan. 2012); R. 500–01 (Apr. 2012).

opinion. *See* R. 22, 23. He gave specific and legitimate reasons, supported by substantial evidence in the record, for giving "little weight" overall to Patterson's assessment and for rejecting the work-preclusive restrictions on attendance; concentration, persistence, and pace; interacting with peers and supervisors; and handling changes in a routine work setting. On this record, I find no error with the ALJ's evaluation of Patterson's assessment. *See Woods v. Comm'r of Soc. Sec.*, No. 6:12cv14, WL 2013 WL 4678381, at *7 (W.D. Va. Aug. 30, 2013) (substantial evidence supported ALJ's finding that counselor's opinions were unsupported by her own treatment notes and inconsistent with other healthcare providers' observations); *Mann v. Comm'r of Soc. Sec.*, No. 6:12cv16, 2013 WL 4507743, at *7–8 (W.D. Va. Aug. 23, 2013) (substantial evidence supported ALJ's finding that "work-preclusive" portions of counselor's opinion were unsupported by her own treatment notes and inconsistent with the claimant's "generally unremarkable mental status examinations"); *cf. Craig*, 76 F.3d at 590 (substantial evidence supported ALJ's decision to reject treating physician's conclusory opinion that conflicted with his own treatment notes and other substantial evidence in the record); *Chestnut v. Colvin*, No. 4:13cv8, 2014 WL 296717, at *3–4 (W.D. Va. June 30, 2014) (Kiser, J.) (substantial evidence supported ALJ's decision to reject treating physician's opinion that was inconsistent with claimant's statements to other healthcare providers).

C.    *Mental RFC*

       Finally, Smallwood argues that the ALJ impermissibly crafted his own mental RFC that conflicted with each relevant medical-source opinion in the record. *See* Pl. Br. 4, 6. A claimant's RFC is the most he can do on a regular and continuing basis despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). "It is an administrative assessment made by the Commissioner based on all the relevant evidence in the [claimant's] record," including objective medical

21

evidence, medical-source opinions, and the claimant's own statements. *Felton-Miller*, 459 F. App'x at 230–31; *accord* SSR 96-8p, 1996 WL 374184 (July 2, 1996). Indeed, as long as the record is otherwise adequate, the ALJ is not required to obtain a medical-source opinion addressing the applicant's RFC. *See Felton-Miller*, 459 F. App'x at 230–31.

The RFC must reflect the combined limiting effects of impairments "supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints." *Carter v. Astrue*, No. 3:10cv510, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011), *adopted by* 2011 WL 2693392 (July 11, 2011); *accord* 20 C.F.R. §§ 404.1545(e), 416.945(e). Although this Court reviews the RFC determination for substantial evidence, the claimant bears the burden of showing that an omitted limitation should have been included and that the omission was not harmless. *Bolden v. Colvin*, No. 4:13cv32, slip op. at 21 (W.D. Va. July 23, 2014) (Hoppe, M.J.), *adopted by* 2014 WL 4052856, at *1 (Aug. 14, 2014) (Kiser, J.).

The ALJ in this case found that Smallwood's mood disorder was severe, but not disabling. *See* R. 17, 18, 24–25. Specifically, he found that Smallwood could "handle simple and repetitive tasks," maintain concentration "within customary work tolerances," "interact with co-workers and supervisors as needed for task completion," and "respond appropriately to change[s] in a routine work setting," but "should have minimal public contact." R. 18.

The ALJ does not fully explain why he included these particular restrictions in Smallwood's RFC. *See generally* R. 17–18, 19–23. Nonetheless, it is clear that the ALJ considered all of the evidence—not just the medical-source opinions—when assessing Smallwood's RFC, as the regulations required him to do. *Johnson*, 2012 WL 2046939, at *3; *see* R. 17–18, 19–23 (summarizing Smallwood's testimony, medical records, counseling notes, and the medical-opinion evidence). It also is clear that the ALJ was persuaded by certain medical and

nonmedical evidence showing how Smallwood's mood disorder affected his RFC. *See* R. 17–18, 19–20, 22–23. For example, the ALJ rejected only those portions of Patterson's opinion that were not supported by other evidence in the record. *Compare* R. 18, 23, *with* R. 514–16. He also credited evidence that Smallwood's mental limitations were greater than those established by the objective medical evidence. *Compare* R. 17–18, 23, *with* R. 66–67, 98–99 (state-agency psychologists' opinions). Contrary to Smallwood's argument, Pl. Br. 6, this is not a case where the ALJ, "[i]n the absence of any psychiatric or psychological evidence to support [his] position," impermissibly substituted his judgment for that of three trained mental health professionals. *Fields*, 2010 WL 723690, at *26 (quoting *Grimmet v. Heckler*, 607 F. Supp. 502, 503 (S.D. W.Va. 1985)).

Further, the "record provides an adequate explanation of the Commissioner's decision" for this Court to determine whether substantial evidence supports the ALJ's underlying factual findings and conclusions. *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011) (brackets omitted); *accord Bishop*, 2014 WL 4347190, at *2 ("[I]f the decision 'is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time.'" (quoting *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)).

The ALJ first summarized Smallwood's testimony describing his debilitating depression, interpersonal conflicts with former employers, and daily activities.[16] *See* R. 17–18, 19–20, 22. He also summarized other relevant evidence, such as Smallwood's work records documenting prolonged employment with relatively few employers. *See* R. 19–20. The ALJ then reviewed all

---

[16] The ALJ also cited a third-party statement from Smallwood's close friend, Gwendolyn Carter, which tends to support Smallwood's own testimony. *See* R. 19, 300. Absent evidence to the contrary, the ALJ's comment that he included Carter's statements in his credibility analysis is sufficient to show that the Commissioner "considered" this evidence. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

of the medical evidence related to Smallwood's mental condition during the relevant period. *See* R. 17, 22–23. These records consistently document examining sources' observations that Smallwood's mood, thought content, judgment, affect, and memory were all within normal limits during the relevant period. *See, e.g.*, R. 349 (Aug. 2010); R. 380, 419 (Sept. 2010); R. 403 (Jan. 2011). But, as the ALJ recognized, they also document Smallwood's "depressed" mood and self-reported difficulties getting along with other people. *See* R. 22. The ALJ reasonably found that medication and "a few" counseling sessions had "been relatively successful" in managing Smallwood's psychological symptoms. R. 22. He also considered the medical-source opinions and provided specific reasons, supported by substantial evidence, for giving them "no weight" or "little weight" overall. R. 23.

After considering this evidence, the ALJ found that Smallwood's severe mood disorder "could reasonably be expected to cause [his] alleged symptoms" but that Smallwood's (and his friend's) statements describing the intensity, persistence, and limiting effects of these symptoms were "not credible to the extent that they [were] inconsistent with" the final RFC determination. R. 19. The ALJ "provided a comprehensive list of reasons," supported by specific evidence in the record, for finding that Smallwood's account of his limitations was not entirely credible. *Cooke v. Colvin*, No. 4:13cv18, 2014 WL 4567473, at *4 (W.D. Va. Sept. 12, 2014) (Kiser, J.) (finding no error where the ALJ did the same). Smallwood does not challenge this credibility finding.

Ultimately, the ALJ found that Smallwood's "concentration and social function ha[d] been deficient at times, [but that] the remainder of his psychological evaluation[s] ha[d] been relatively normal." R. 22. These findings track with an RFC restricting Smallwood to simple, repetitive work that does not require prolonged concentration and involves little direct interaction

with others. *See* R. 18. Accordingly, I find that substantial evidence supports the ALJ's final RFC determination. *See Fields*, 2010 WL 723690, at *30.

The ALJ's reliance on the VE's testimony in response to a hypothetical question reflecting this RFC, *see* R. 25–25, 53–54, 57, also was proper. *See Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) ("In order for a vocational expert's opinion to be relevant or helpful, . . . it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." (brackets omitted)). This testimony, which Smallwood does not challenge on appeal, provides substantial evidence to support the Commissioner's final decision that Smallwood is not disabled within the meaning of the act. *See Walls v. Barnhart*, 296 F.3d 287, 292 (4th Cir. 2002).

## IV. Conclusion

This Court must affirm the Commissioner's final decision that a person is not disabled if the ALJ properly applied the law and substantial evidence in the record supports his factual findings. I find that both requirements were met here. Therefore, I recommend that this Court **DENY** Smallwood's motion for summary judgment, ECF No. 18, **GRANT** the Commissioner's motion for summary judgment, ECF No. 19, and **DISMISS** this case from the docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: December 10, 2014

Joel C. Hoppe
United States Magistrate Judge